Submitted January 27, affirmed February 24, 2022

In the Matter of D. L.,
a Person Alleged to have Mental Illness.
STATE OF OREGON,
*Respondent,*

*v.*

D. L.,
*Appellant.*

Multnomah County Circuit Court
21CC02786; A176108

505 P3d 1101

Petitioner appeals a judgment involuntarily committing him to the Oregon Health Authority for up to 180 days, challenging the determination that he is dangerous to others due to a mental disorder, ORS 426.130(1)(a)(C). Petitioner argues that the Court of Appeals should reconsider the definition of dangerousness relevant to that determination. The state responds that petitioner's behavior provided a clear foundation for dangerousness, and the legislative history of ORS 426.005(1)(f)(A) supports a reconsideration of the dangerousness standard. *Held*: The Court of Appeals declined to revisit the dangerousness standard and found that petitioner was dangerous to others due to a mental disorder under the definition set forth in *State v. E. J. J.*, 308 Or App 603, 612, 479 P3d 1073 (2021). Accordingly, the trial court did not err by finding petitioner was dangerous to others due to a mental disorder.

Affirmed.

Julia A. Philbrook, Judge pro tempore.

Joseph R. DeBin and Multnomah Defenders, Inc., filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Christopher Page, Assistant Attorney General, filed the brief for respondent.

Before James, Presiding Judge, and Egan, Judge, and Kamins, Judge.

JAMES, P. J.

Affirmed.

**JAMES, P. J.**

Appellant appeals a judgment involuntarily committing him to the Oregon Health Authority for up to 180 days, contending that the trial court erred because the record lacked clear and convincing evidence to establish that he was dangerous to others due to a mental disorder under ORS 426.130(1)(a)(C). We affirm.

Unless we exercise our discretion to review *de novo*, which we do not in this case, "we view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *State v. L. R.*, 283 Or App 618, 619, 391 P3d 880 (2017) (internal quotation marks omitted); *see also State v. S. R. J.*, 281 Or App 741, 748-49, 386 P3d 99 (2016) ("Whether the evidence of danger is legally sufficient to support a determination that appellant is 'dangerous' for purposes of ORS 426.005(1) is a determination that we review as a matter of law."). Having reviewed the briefing, the record, and the applicable law, we note that a more detailed discussion of the facts and our analysis in this particular case would not significantly benefit the bench, the bar, or the public.

The trial court found that appellant had a mental disorder and was dangerous to others. In addition, the court entered an order prohibiting the purchase or possession of firearms. In finding appellant dangerous, the court reasoned that appellant's violence towards his sister in addition to other threatening behavior was the result of his mental illness:

> "[P]sychotic beliefs *** compelled him to hit her in the head while she was driving, and it was those psychotic beliefs that caused him to grab the steering wheel to try to direct the car to a hotel that he was unable to explain where it was or who was in there[.] ***

> "And it was his psychotic beliefs that led him to confront the person in the Plaid Pantry while the police were being called to assist his sister, who had just suffered a very traumatic incident that could have resulted in death."

Furthermore, the trial court found that appellant's assault on his sister was not an isolated incident—as evidenced by his confrontations with others and his delusional behavior that continued on the day of the commitment hearing.

Appellant's sole assignment of error is that the trial court erred in determining that he was a person with a mental illness within the meaning of the civil commitment statutes, specifically that he was dangerous to others as a result of his mental disorder. Appellant asks us to "define the word, 'dangerous,' in the phrase 'dangerous to *** others' in the same manner as [we do] with 'dangerous to self.'" In other words, appellant argues that the standard should be "that due to a mental disorder a person presents a particularized and highly probable threat of causing death or serious physical harm in the near future *to self or others*." The state responds that appellant's conduct should suffice to provide a clear foundation for predicting future dangerousness because the assault on his sister was not an isolated incident. Furthermore, the state argues that if we do not find the evidence sufficient to support the commitment, we should reconsider our interpretation of the dangerousness standard under ORS 426.005(1)(f)(A); the state provides legislative history to support that argument. We appreciate that our decisions in this area may benefit from further consideration, and we do not foreclose undertaking that effort in the future. Nevertheless, this case is not the vehicle for such exploration.

A court may order that a person be involuntarily committed if, "based upon clear and convincing evidence," the court determines that he or she is a "person with mental illness" and is unwilling or unable to participate in voluntary treatment under ORS 426.130(1). The phrase "person with mental illness" is defined, in relevant part, in ORS 426.005(1)(f)(A) and includes someone who because of a mental disorder is "[d]angerous to self or others." "A person is 'dangerous to others' for purposes of ORS 426.005(1)(f)(A) if his 'mental disorder makes [him] highly likely to engage in future violence towards others, absent commitment.'" *State v. E. J. J.*, 308 Or App 603, 612, 479 P3d 1073 (2021) (quoting *State v. S. E. R.*, 297 Or App 121, 122, 441 P3d 254 (2019)).

To determine whether or not someone is dangerous to others due to a mental disorder, "we consider the conduct itself and the circumstances under which it occurred, all as viewed in light of appellant's personal history and other contextual clues." *E. J. J.*, 308 Or App at 615 (citing *State v. J. G.*, 302 Or App 97, 100-01, 458 P3d 721 (2020)). Frequently, we have found that multiple violent acts or a violent act coupled with additional threats will demonstrate that a person is highly likely to engage in future violence; however, "[a]cts of violence are not required to establish that a person is dangerous; verbal threats may be sufficient, if the evidence provides a foundation for predicting future violent behavior." *State v. J. D.*, 315 Or App 316, 321, 499 P3d 113 (2021) (citing *J. G.*, 302 Or App at 101 n 3).

We conclude that the evidence was sufficient for the trial court to find, by clear and convincing evidence, that appellant was dangerous to others. Not only did appellant assault his sister while she was driving, but he engaged in other threatening behaviors based on the same psychotic and delusional thinking that motivated that attack.

Affirmed.